UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------X

TADCO CONSTRUCTION CORP. and
THOMAS DEMARTINO,

       Plaintiffs,

  -against-

DORMITORY AUTHORITY OF THE STATE
OF NEW YORK, TYRONE MIDDLETON,
PAT CINELLI, JAMES GRAY, JACK
KEMP AND JOHN DOES #1-#5,

       Defendants.

-------------------------------X

<u>MEMORANDUM AND ORDER</u>

Civil Action No.
08-CV-0073(DGT)

Trager, J:

    This case arises out of a troubled construction contract
between TADCO Construction Corporation ("TADCO") and the
Dormitory Authority of the State of New York ("DASNY") to build
a new dormitory facility on Staten Island.  Plaintiff TADCO
alleges multiple breach of contract claims against DASNY, and
further alleges a due process violation under 42 U.S.C. § 1983
stemming from purportedly defamatory comments made by DASNY
during its termination of the contract with TADCO and from
DASNY's failure to pay TADCO promptly for work performed.
Plaintiff Thomas DeMartino ("DeMartino"), TADCO's on-site
superintendent and management representative, additionally
asserts federal and state claims of false arrest, malicious
prosecution and abuse of process, claiming that DASNY employees

1

Tyrone Middleton, Pat Cinelli, Jack Kemp and John Doe improperly had him arrested for trespassing at the job site on two separate occasions. Defendants have moved to dismiss all of plaintiffs' federal claims as well as DeMartino's state law claims, and have requested that this court decline to exercise supplemental jurisdiction over TADCO's state law claims. For the reasons explained below, this motion is granted in part and denied in part.

## Background

### (1)

### Contractual Disputes between TADCO and DASNY

#### a. Project Delays

The following facts are drawn from plaintiff's pleadings and, for purposes of this motion, are presumed to be true. In May 2005, defendant DASNY began soliciting bids for a new ten-bed residence building for the Staten Island Developmental Disabilities Services Office (the "project"). Compl. ¶ 14. The project was structured as a "multi-prime" project, meaning that four prime contractors would perform discrete segments of the project under the direct supervision of DASNY. Id. at ¶¶ 15-16. Four separate prime contracts were therefore awarded: one for general construction work, one for mechanical work, one for electrical work and one for plumbing work. Id.

Plaintiff TADCO, a general construction contractor, bid on and was awarded the contract for general construction work (the "contract") around June 15, 2005. <u>Id.</u> at ¶¶ 17, 23. Prior to the instant dispute, TADCO had often been awarded state and municipal public works contracts and had previously worked with DASNY several times. <u>Id.</u> at ¶ 13. The contract specified that the project was to be completed by September 29, 2006. <u>See</u> Compl., Ex. A at 2 (contract between TADCO and DASNY).

However, the project was plagued with delays and problems from the outset. Plaintiffs generally attribute these delays to DASNY's funding problems and DASNY's poor management of the other prime contractors. <u>Id.</u> at ¶¶ 19-24. More specifically, TADCO points to several delays that were caused by events outside of its control and within DASNY's control. First, plaintiffs allege that their commencement of the project was delayed by approximately five months when DASNY unexpectedly required TADCO to perform some up-front work not included in the plans and specifications, including building a construction fence around the jobsite, <u>id.</u> at ¶¶ 25-29, and probing and underground radar work to locate existing utility lines, <u>id.</u> at ¶¶ 30-34. As a result of requiring this extra work, DASNY agreed to extend the completion date of the project by six weeks, from September 29, 2006, to November 15, 2006. <u>Id.</u> at ¶ 35. Then, a major design defect in the framing of the

building set back TADCO's progress on the project further throughout June and July 2006. Id. at ¶ 41.

Further delays ensued as a result of the slow progress of the mechanical, electrical and plumbing work contractors (collectively, the "MEP contractors"). Id. at ¶¶ 42-50. TADCO believed the MEP contractors' deficient performance was the fault of poor supervision and direction on the part of DASNY, and approached DASNY with concerns over the progression of the project several times. Id. at ¶ 51. In a September 13, 2006 meeting, TADCO explains that DASNY "acknowledged its responsibility to provide overall project management and coordination," promised to provide better supervision and coordination of the four prime contractors in the future and again extended the project completion date, this time until December 7, 2006. Id. at ¶ 52. Nevertheless, problems with the MEP contractors' performance continued throughout the fall of 2006. These problems led DASNY, in early December 2006, to extend the project completion date to January 11, 2007. Id. at ¶ 61.

At the same time these MEP delays were occurring, a dispute erupted between DASNY and TADCO regarding a contract provision that required TADCO to backfill open trenches at the jobsite with soil taken from on-site. Id. at ¶ 62. At some point, apparently during the summer of 2006 (the complaint specifies

only "prior to September 2006"), TADCO discovered that the soil at the site was not suitable for use as backfill because of its high moisture content.  Id. at ¶ 63.  TADCO attributed its late discovery of this moisture problem to DASNY's failure to provide TADCO with any soil boring logs or geotechnical data.  Id. at ¶ 64.  Therefore, it asked DASNY to resolve the problem during fall of 2006.  However, according to TADCO, DASNY was simply non-responsive.  Id. at ¶¶ 66-73.

**b. Thomas DeMartino's Arrests**

In November, this unresolved backfill problem provoked a disagreement between an employee of DASNY and an employee of TADCO.  One of DASNY's field representatives and now a named defendant, Tyrone Middleton, ordered DeMartino, TADCO's onsite project superintendent, to cover the open trenches at the jobsite with wood planks on November 9, 2006.  Id. at ¶¶ 75-76.  DeMartino refused, explaining that this work was not specified in the contract and would require extra labor, materials, supplies and equipment.  Id. at ¶¶ 77-78.  Middleton responded this same day by lodging a criminal complaint against DeMartino with the state police officers assigned to the facility, claiming that DeMartino was trespassing.  Id. at ¶¶ 80, 134.  The complaint additionally alleges that Pat Cinelli, the Director of DASNY's Statewide Utilities Unit, and/or Jack Kemp,

the Chief of Construction Contracts for DASNY, "approved of and authorized" Middleton's actions in having DeMartino arrested. Id. at ¶ 139. As a result of Middleton's complaint, DeMartino was arrested, taken to the local precinct and issued a criminal summons for trespassing. Id. at ¶ 82.

Apparently, however, this arrest did not dissuade DeMartino from returning to the job site. In early January 2007, Middleton or some other DASNY personnel lodged a second criminal complaint against DeMartino, who was once again arrested for trespassing at the job site. Id. at ¶¶ 84-86. DeMartino spent one night in jail and was subsequently charged with criminal trespassing. Both of the trespassing charges were subsequently dismissed in their entirety. Id. at ¶¶ 83, 87.

### c. Disputed Work

Throughout the course of TADCO's performance under the contract, DASNY repeatedly directed TADCO to perform "charge order" work, i.e., work not included within the contract fee negotiated. Id. at ¶¶ 88-89. DASNY at times used the "disputed work clause" in the contract to force TADCO to perform this work by claiming the work was "disputed." Id. TADCO believed the contract entitled it to payment for the value of this extra work and requested payment, but DASNY allegedly delayed the processing of the charge orders for this work due to a lack of

funding. Id. at ¶¶ 89-90. The accrual of several hundred

thousand dollars of unpaid charge order work by December 2006

led TADCO to file an action in state court against DASNY on

January 5, 2007, in which it sought to recover damages for

"abuse of State process, failure to provide proof of funding,

breach of implied covenants of good faith and fair dealing, and

breach of contract." Id. at ¶¶ 93-94. Neither party has

provided any further information on the status of this state

court action.

### d. Termination of the Contract

At the time TADCO filed the state court lawsuit against

DASNY, it estimates that it had completed over eighty-five

percent of its work on the project. Id. at ¶ 95. However,

TADCO asserts that, although it was willing and able to complete

the project, it could not move forward without DASNY resolving

the soil problem and problems with the MEP contractors, or

responding to several requests for information that TADCO had

submitted to DASNY. Id. at ¶¶ 96-99. TADCO's president

reiterated this position in a letter to Jack Kemp, DASNY's Chief

of Construction, on January 2, 2007. Id. at ¶ 99.

DASNY, however, believed that TADCO had failed to perform

its obligations under the contract and did not demonstrate the

ability to complete the work. Id. at ¶ 103. Although the

parties exchanged several letters apparently attempting to come to some agreement, DASNY ultimately chose to terminate the contract with TADCO on January 17, 2007. Id. at ¶¶ 100-07. TADCO believes this termination was wrongful. As evidence, it points to the results of an investigation by First Sealord Surety, Inc., the bonding company that issued the performance and payment bonds on the project. Id. at ¶ 108. First Sealord Company's independent investigation report of March 28, 2007 concluded that "DASNY's election to terminate TADCO was unjustified and improper." Id. At the time of termination, DASNY reportedly owed TADCO $79,485.00 for completed contract work and $45,402.31 in retainage, in addition to the money it owed for TADCO's extra work, none of which has been paid to TADCO. Id. at ¶ 110-11.

Around the same time the contract was terminated, TADCO asserts that James Gray, DASNY's Managing Director of Construction, Jack Kemp and/or other persons associated with DASNY made false and "defamatory allegations concerning TADCO's purported failure to perform its obligations under the Contract and to complete the Project," to the MEP contractors, TADCO's subcontractors and others within the construction industry. Compl. ¶ 109.

### The Current Action

On the basis of the above facts, TADCO and DeMartino brought the current action in federal court on January 7, 2008. The complaint alleges thirty-nine causes of action, which can generally be grouped as: (1) violations of the Due Process clause under the Fifth and Fourteenth Amendments and 42 U.S.C. § 1983 against DASNY, Gray, Kemp and John Does (1st Cause of Action); (2) malicious prosecution, abuse of criminal process and false arrest under the Fourth, Fifth and Fourteenth Amendments and 42 U.S.C. § 1983 against DASNY, Middleton, Cinelli, Kemp and John Doe (2nd–7th Causes of Action); (3) malicious prosecution, abuse of criminal process and false arrest under New York law (34th–39th Causes of Action); (4) wrongful termination of the contract against DASNY (8th Cause of Action); (5) twenty-one breach of contract claims against DASNY (9th–30th Causes of Action); (6) quantum meruit against DASNY (31st–32nd Causes of Action); and (7) unjust enrichment against DASNY (33rd Cause of Action).

Defendants have moved under Fed. Rule Civ. Proc. 12(b)(6) to dismiss TADCO's § 1983 due process claim and DeMartino's federal and state false arrest, malicious prosecution and abuse of process claims (1st-7th and 34-39th Causes of Action). They first argue that TADCO has not stated a claim that rises to the

level of a due process violation and instead is impermissibly attempting to constitutionalize a state law contract claim. With respect to DeMartino's claims, defendants primarily argue that DASNY had exercised its contractual right to bar DeMartino from the job site and, therefore, DeMartino was in fact trespassing on both the occasions he was arrested. Accordingly, defendants request that all of plaintiffs' federal claims be dismissed. Although defendants are not at this time challenging the adequacy of TADCO's state law claims (8th-33rd Causes of Action), they suggest that the court should decline to exercise supplemental jurisdiction over these claims.

TADCO, who is still represented by counsel, has submitted a Memorandum of Law in Opposition to Defendant's Motion to Dismiss (hereinafter "Pl.'s Mem."). However, DeMartino, who is now proceeding pro se after TADCO's counsel withdrew from his representation in October 2008, has submitted no opposition. See Pl.'s Mem. at 18 n.1. The implications of DeMartino's failure to respond are discussed infra.

**Discussion**

**(1)**

**Treatment as a Motion to Dismiss and Standards
Governing Motions to Dismiss**

Preliminarily, it must be determined whether to treat the instant motion as a motion to dismiss or to convert it into one for summary judgment, given that both parties have submitted some materials outside the pleadings. "When matters outside the pleadings are presented in response to a 12(b)(6) motion, a district court must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting materials." Friedl v. City of New York, 210 F.3d 79, 83 (2d Cir. 2000) (internal marks omitted). "A district court, however, is not obliged to convert a 12(b)(6) motion to one for summary judgment in every case in which a defendant seeks to rely on matters outside the complaint in support of a 12(b)(6) motion; it may, at its discretion, exclude the extraneous material and construe the motion as one under Rule 12(b)(6)." Toussie v. Town Bd. of East Hampton, 08-CV-1922, 2010 WL 597469, at *3 n.1 (E.D.N.Y. Feb. 17, 2010) (internal quotation marks omitted).

At this stage, defendants' 12(b)(6) motion will not be converted into a motion for summary judgment, as defendants have

not urged the court to consider its motion as one for summary judgment in the alternative, defendants have not filed an answer and it appears from the documents presented that key facts are yet to be discovered. See id. (declining to convert 12(b)(6) motion into motion for summary judgment where no answer had been filed and discovery was not yet complete); cf. Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 75-76 (2d Cir. 1998) (finding that 12(b)(6) motion could have been converted into one for summary judgment where "[t]he government moved for summary judgment in the alternative" and thereby gave the opposing party "sufficient notice" and "ample opportunity to submit supporting affidavits and evidence").

Nevertheless, one document outside of the pleadings will be considered in ruling on this motion. Although plaintiffs' complaint attached only a short governing contract, the contract signed between DASNY and TADCO incorporates by reference a longer document containing the contract's General Conditions and Specifications and Drawings, which defendants have appended to their motion. See Decl. of Joel Graber ("Graber Decl."), Ex. B. The General Conditions, although not part of plaintiffs' pleadings, are integral to plaintiffs' complaint, as plaintiffs rely on them to state, inter alia, claims that the contract was improperly terminated, that TADCO had a right to payment for the value of extra work it performed and that defendants had no

contractual right to exclude DeMartino from the job site.  See

Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co., 936 F.2d 759,

762 (2d Cir. 1991) (collecting cases permitting consideration

of a document that is integral to plaintiff's pleadings, even

when plaintiff fails to attach it to the complaint).  Indeed,

the complaint is "replete with references to the contract[] and

requests judicial interpretation of [its] terms."  Chambers v.

Time Warner, Inc., 282 F.3d 147, 153-54 & n.4 (2d Cir. 2002)

(explaining that the court may consider a document outside the

pleadings "where the complaint 'relies heavily upon its terms

and effect,' which renders the document 'integral' to the

complaint.");  see, e.g., Compl. ¶¶ 19, 32, 62, 77, 88, 89, 106-

07, 110, 179-82, 185-88, 198, 202.  Therefore, these General

Conditions will be considered in ruling on this motion.[1]

---

[1] Defendants argue that their additional exhibits – including
several letters exchanged between DASNY and TADCO – should be
considered in ruling on this motion as part of the public
record.  See Graber Decl. ¶ 3.   However, Second Circuit
precedent does not clearly extend this far.  It has previously
been held that district courts may take judicial notice of
"public disclosure documents required by law to be filed, and
actually filed, with the SEC," and public records such as case
law and statutes, but it is not clear that this rule extends to
the contents of a publicly filed letter from a state agency to
its contractor.  See Kramer v. Time Warner Inc., 937 F.2d 767,
774 (2d Cir. 1991); Pani, 152 F.3d at 75.  Moreover, defendants'
assertion that such documents are public is contradicted by
their reply memorandum, where they argue that one of the
appended letters is mischaracterized by TADCO "as 'public' for
no reason other than that TADCO received it from a State
agency."  See Defs.' Reply at 3 & n.2.  Accordingly, at this

As this motion is being treated as a motion to dismiss
under Rule 12(b)(6), the critical inquiry with respect to each
of plaintiffs' claims is whether the complaint contains "enough
facts to state a claim to relief that is plausible on its face."
Bell Atl. v. Twombly, 550 U.S. 544, 570 (2007).  In determining
whether this standard has been met, the complaint is to be
construed liberally, with "all factual allegations in the
complaint [accepted] as true, and . . . all reasonable
inferences [drawn] in plaintiff's favor."  Hayden v. Paterson,
594 F.3d 150, 160 (2d Cir. 2010) (internal marks omitted).

**(2)**

**Claims Under Section 1983**

All of plaintiffs' federal law claims are brought pursuant
to 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of
> any State . . . subjects, or causes to be
> subjected, any citizen of the United States or
> other person within the jurisdiction thereof
> to the deprivation of any rights, privileges,
> or immunities secured by the Constitution and
> laws, shall be liable to the party injured in
> an action at law, suit in equity, or other
> proper proceeding for redress . . ."

stage, the additional exhibits submitted by defendants will not
be considered.

This section does not, however, itself create substantive rights, but "merely provides a method for vindicating federal rights elsewhere conferred." <u>Rateau v. City of New York</u>, 06-CV-4751, 2009 WL 3148765, at *4 (E.D.N.Y. Sept. 29, 2009) (quoting <u>Graham v. Connor</u>, 490 U.S. 386, 393-94 (1979)). Therefore, "to state a claim under § 1983, plaintiff must allege (1) a violation of his constitutional rights (2) by a person acting under color of state law." <u>Weintraub v. Bd. of Educ. of New York</u>, 423 F. Supp. 2d 38, 49 (E.D.N.Y. 2006).

As for the second requirement, defendants do not challenge plaintiffs' claim that DASNY and its employees were acting under color of state law.[2] They do, however, vigorously challenge whether plaintiffs have adequately alleged any violation of their constitutional rights. TADCO's and DeMartino's claimed constitutional violations will be examined in turn.

---

[2] DASNY and the individual defendants as named in their official capacities have not asserted the defenses of sovereign immunity or an inability to be sued as a 'person' under § 1983, likely because the one federal case on point, and the New York Court of Appeals, have held that DASNY is not an arm of the state. <u>See</u> <u>TM Park Ave. Assocs. v. Pataki</u>, 986 F. Supp. 96, 105-07 (N.D.N.Y. 1997), <u>vacated in part on other grounds</u>, 214 F.3d 344 (2d Cir. 2000); <u>Dormitory Auth. of N.Y. v. Span Elec. Corp.</u>, 18 N.Y.2d 114, 117-18, 218 N.E.2d 693, 695-96, 271 N.Y.S.2d 983, 985-86 (1966).

### TADCO's Due Process Claim

TADCO first asserts a claim, under 42 U.S.C. § 1983, that defendants violated its right to due process under the Fifth and Fourteenth Amendments. In order "to survive a motion to dismiss, a due process claim under section 1983 must allege the deprivation of a constitutionally protected interest." Abramson v. Pataki, 278 F.3d 93, 99 (2d Cir. 2002). Such constitutionally protected interests include both property and liberty interests, but only to the extent that the interest is one to which a person has a "legitimate claim of entitlement." Id. TADCO claims that it was deprived of both a constitutionally protected property interest and liberty interest. See Compl. ¶ 122. In fact, for the reasons explained below, defendants are correct that TADCO has not properly alleged either.

### a. Property Interest

First, TADCO asserts a property interest in its right to timely payment, which it claims DASNY violated by its delay in processing TADCO's charge orders and by its failure to pay for work performed by TADCO. In support of this claimed property interest, TADCO cites Signet Construction Corp. v. Borg, 775 F.2d 486, 489 (2d Cir. 1985). Signet did indeed find that "a

contractor's right to timely payment for work done under its contract with a state agency constitutes a property interest, deprivation of which by [a state actor] without procedural due process would violate its Fourteenth Amendment rights." Id.

However, reference to Signet alone ignores some of the nuances since developed by the Second Circuit in this area. In particular, in S&D Maintenance Co. v. Goldin, 844 F.2d 962, 968-69 (2d Cir. 1988), the Second Circuit examined another claim to prompt payment made by a government contractor. There, the court was careful to emphasize that although the scope of interests protected by the Due Process clause had been enlarged by the Supreme Court, "an interest in enforcement of an ordinary commercial contract with a state is qualitatively different from the interests the Supreme Court has thus far viewed as 'property' entitled to procedural due process protection." Id. at 966. It went on to hold that S&D could not establish a due process violation occasioned by the city's refusal to promptly pay unless it could point to a specific entitlement – either in the contract, or in statutory law – requiring prompt payment. Id. at 969 (finding that S&D could establish no such entitlement because the contract left the time of payment to the discretion of the government agency and no statutory laws were on point).

Similarly, in Christ Gatzonis Electrical Contractor, Inc. v. New York School Construction Authority, the Second Circuit

again made clear that a contractor's property interest in timely payment "arises only where there exists a contractual or state law entitlement to prompt payment." 23 F.3d 636, 639 (2d Cir. 1994) (internal quotation marks omitted). In that case, Gatzonis Electric had its contract terminated by the School Construction Authority ("SCA") under a termination for convenience clause, which provided that upon termination, "the Authority shall pay the contractor the costs actually incurred by the Contractor up to the effective date of such termination . . . ." Id. (internal marks omitted). Although this provision seemed to create a right to payment, the court highlighted another provision in the contract, which "expressly reserve[d] to the SCA the 'right to approve only those cost distributions which, in the SCA's opinion, are reasonable, equitably balanced and correspond to the quantities in the Contract Documents,'" as well as a provision that allowed the SCA to withhold from the balance due "an amount necessary to satisfy any and all claims . . . against the Contractor." Id. Focusing on these latter provisions, the court found that "[the] power of set-off in the . . . contracts affords the SCA substantial latitude in approving and making payments. Since that contractual grant of discretion is the stated ground for the SCA's withholding of payments, the contracts cannot be said to confer upon Gatzonis Electric an entitlement to prompt payment." Id. at 639-40.

Further, no right to prompt payment was found to exist under any statutory provisions, as the governing law, New York General Municipal Law § 106-b, required prompt payment only if the requisitions for which payment was being demanded had been approved.  Id. at 640.

Turning to the instant case, the contract and statutory provisions involved similarly do not create the kind of clear entitlement to prompt payment that amounts to a cognizable property interest. TADCO does not itself point to any contractual or statutory provision that it believes creates such an entitlement, and an independent examination of the contract provisions reveals substantial flexibility in payment built into the contract.  The contract provides no requirement of prompt payment where the contract is terminated for cause, Def.'s Ex. B at § 10.01; upon termination for convenience, it provides that: "The Owner shall pay the Contractor for Project Work performed . . . and accepted by the Owner . . . ."  Id. at § 10.02 (emphasis added).  Another contract condition states that the Owner "may make a partial payment to the contractor" during the performance of the contract, but does not appear to require it.  Id. § 17.01(A).  Instead, the contract requires that:

> The Owner, when all the Work is
> substantially complete, shall pay to the
> Contractor the balance due . . . less:

> 1.   two (2) times the value of any
> remaining items of Work to be completed or
> corrected; and
>
> 2.   an amount necessary to satisfy any and
> all claims, liens or judgments against the
> Contractor.

Id. § 17.01(D).  This last provision again allows the Owner

several grounds on which to withhold payment.

Plaintiffs are also alleging a right to prompt payment for

hundreds of thousands of dollars of "charge work," which DASNY

ordered them to complete as "disputed work" under the

contractual provisions.  Compl. at ¶ 88-89.  Per the terms of

the contract's "Claims for Extra Work" provision, however, it

appears that the Owner is provided leeway in determining whether

this disputed work is to be paid for and in valuing such work.

See Def. Ex. B. § 11.01.  Moreover, the contract's section on

"Withholding of Payments" gives the owner further authority to

withhold payments for a variety of reasons.  See id. at § 17.04.

Based on this examination of the contract, the terms here

appear comparable to the ones in Gatzonis, 23 F.3d at 639.  That

is, there does not appear to be a clear contractual entitlement

to prompt payment; rather, the contract affords DASNY

"substantial latitude in approving and making payments," id.,

and allows withholding of payments for a variety of reasons.

Given the contractual flexibility highlighted above, it cannot

be said that TADCO has plausibly pled a clear entitlement to prompt payment under the contract.

Nor can any statutory provision be discerned that creates such a right. Timely payment under the contract, per its terms, is governed by New York Public Authority Law § 2280. See Def. Ex. B § 17.01(F). That law, however, does not create a clear entitlement to prompt payment, but rather mandates that interest be paid by any public authority that does not promptly pay its contractors according to its established policy. See N.Y. Pub. Auth. Law § 2280.2-7. Ultimately, then, what exists here is not any "clear entitlement" to prompt payment of the sort that creates a due process property right. Cf. S&D Maint., 844 F.2d at 969; Gatzonis, 23 F.3d at 639. Instead, TADCO's "property interest" claim is in reality a breach of contract claim against DASNY for failure to pay it money owed under the contract, which should be adjudicated as such under relevant New York law. Cf. S&D Maint., 844 F.2d at 968 (finding that "S&D's remedy, if it exists at all, lies in state court for breach of contract").

**b. Liberty Interest**

However, the inquiry into whether or not TADCO has stated a cognizable due process violation does not end with the determination that it has no property right to prompt payment. TADCO's complaint also sets forth a claim of a constitutionally

protected liberty interest in its "reputation for integrity and professional competence as a general contractor and its status as a responsible bidder on public works projects."  Compl. ¶ 113.  This type of § 1983 liberty interest claim is commonly referred to as a "stigma-plus" claim, and "requires a plaintiff to allege (1) the utterance of a statement about her that is injurious to her reputation, that is capable of being proved false, and that he or she claims is false [the 'stigma'], and (2) some tangible and material state-imposed burden . . . in addition to the stigmatizing statement [the 'plus']."  Velez v. Levy, 401 F.3d 75, 87 (2d Cir. 2005) (internal quotation marks omitted).  Here, however, TADCO fails to allege the requisite injury to reputation required to illustrate "stigma" for purposes of a constitutional claim.

To satisfy the "stigma" prong of its due process liberty claim, TADCO must show: (1) that the statements complained of were false; (2) that they stigmatized the plaintiffs; and (3) that they were publicized.  Abramson v. Pataki, 278 F.3d at 101-02.  Even assuming that TADCO has properly alleged publication and falsity, it has failed to adequately plead that the statements were sufficiently stigmatizing.

"Not every derogatory statement made about an employee who loses his or her job imposes sufficient stigma to implicate the liberty interest . . . ."  O'Neill v. City of Auburn, 23 F.3d

685, 691 (2d Cir. 1994).[3]  Instead, in order to state a

constitutional violation, the Second Circuit requires the

defamatory statement to be so serious as to "denigrate the

employee's competence as a professional and impugn the

employee's professional reputation in such a manner as to

effectively put a significant roadblock in that employee's

continued ability to practice his or her profession."  Donato v.

Plainview-Old Bethpage Cent. School Dist., 96 F.3d 623, 630-31

(2d Cir. 1996); see also O'Neill, 23 F.3d at 692-93

("[G]overnmental allegations of professional incompetence . . .

will not support a [stigma-plus] cause of action unless the

allegations go to the very heart of the employee's professional

competence and threaten to damage his professional reputation,

significantly impeding his ability to practice his profession.")

(internal marks and citations omitted).

This standard sets a high bar for the type of reputational

damage that must be alleged in order to adequately plead stigma.

It is clear that "vague statements of unspecified incompetence"

---

[3] Although the standards quoted here refer specifically to
statements made about a government employee in the course of his
or her termination, courts have analogized the termination of a
government contractor to the termination of a government
employee and thus have borrowed these standards in analyzing
stigmatizing comments made in both situations.  See, e.g., S&D
Maint., 844 F.2d at 970-71; Malapanis v. Regan, 340 F. Supp. 2d
184, 194 (D. Conn. 2004) (examining the State's termination of a
contractor under these stigma-plus standards); D & D Assocs. v.
Bd. of Educ. of N. Plainfield, Civ. Action No. 03-1026, 2007 WL
4554208, at *10-11 (D.N.J. Dec. 21, 2007) (same).

do not suffice; on the other hand, "extensively detailed lists of . . . supposed professional failings" do. See Donato, 96 F.3d at 631 (internal quotation marks omitted). Of particular relevance here, courts have drawn a line between those statements that speak only to a plaintiff's "failure to perform a particular job," and those statements which charge that a plaintiff is "incapable of doing the job" due to incompetence. Piccoli v. Yonkers Bd. of Educ., 08-CV-8344, 2009 WL 4794130, at *3 (S.D.N.Y. Dec. 11, 2009). This distinction is justified on the ground that "statements of professional incompetence – as opposed to statements of failure to perform in a given instance – are generally found to be 'something graver' due to the higher likelihood that they could result in disqualification from future employment." Id.; see also O'Neill, 23 F.3d at 692 ("A prospective employer . . . is far more likely to hire one who has chosen to perform below par in a particular prior engagement than one who was incapable of doing the job.").

Moreover, conclusory allegations that a plaintiff's reputation has been damaged, that a plaintiff's career has been destroyed or that a substantial roadblock has been placed in a plaintiff's ability to continue its profession are insufficient to withstand a motion to dismiss. See Srinivas v. Piccard, 648 F. Supp. 2d 277, 290 (D. Conn. 2009) (dismissing plaintiff's stigma-plus claim for, among other reasons, failure to

adequately allege a sufficiently grave stigma).  A plaintiff
must back up such conclusions by pleading facts "that could show
she has been prevented from pursuing her career because of
stigmatizing statements made by . . . the defendants." Id.; see
also Piccoli, 2009 WL 4794130, at *4 (dismissing stigma-plus
claim because "[p]laintiff [did] not provide factual allegations
to render plausible her claim that the statements were
stigmatizing in that they called into question her good name and
integrity or seriously hindered her ability to find work in her
field").

TADCO's pleadings fail to show that DASNY made any
statements about it that go to the heart of its professional
competence, see O'Neill, 23 F.3d at 692, or that put a
"significant roadblock" in its continued ability to practice its
profession, Donato, 96 F.3d at 631.  TADCO's defamation claim
simply states, in one sentence, that: "Upon information and
belief, in connection with and subsequent to the termination,
Mr. Gray, Mr. Kemp and/or another/other employee(s), agent(s),
representative(s) and/or servant(s) of DASNY publicly
disseminated false, disparaging, and defamatory allegations
concerning TADCO's purported failure to perform its obligations
under the Contract and to complete the Project to, among others,
the MEP contractors, TADCO's subcontractors, and other persons

and entities in the construction industry."[4] Compl. ¶ 109. This statement is exactly the type that has previously been held not to create a sufficiently serious stigma, because it speaks of TADCO's performance under one particular contract, not of TADCO's overall incompetence. Cf. O'Neill, 23 F.3d at 692. The fact that DASNY told subcontractors and MEP contractors that TADCO failed "to perform its obligations under the Contract" and failed "to complete the Project" does not suggest that TADCO is incapable of completing any project, and does not substantially denigrate its professional competence so as to create the "stigma" necessary to formulate a constitutional claim. Cf. id. (finding that a statement that a person performed below par on a past project did not create a sufficiently serious stigma).

In TADCO's Memorandum of Law in Opposition to the Motion to Dismiss, it adds to its allegations of defamation the contents of a letter sent from James Gray, DASNY's Managing Director of Construction, to TADCO on January 10, 2007, a copy of which is annexed to defendants' motion papers. See Graber Decl., Ex. C. Defendants argue that the contents of this letter should not be considered because such amendment of the pleadings through

---

[4] Defendants argue that plaintiffs' stigma-plus claim should be dismissed for failure to adequately plead the allegedly defamatory statements made by DASNY. This contention need not be addressed, because even assuming that plaintiff has adequately pled the offending statements, the statements identified do not create the stigma necessary to state a constitutional claim.

responsive papers is impermissible.  Moreover, it is
independently noted that if such evidence were considered at
this stage, this court would be required to convert defendant's
motion into one for summary judgment.  See Fed. R. Civ. P.
12(d).  However, even if the contents of this letter were
considered, they would not appreciably add to TADCO's pleading
of a stigma.  The letter contains statements that "Tadco is in
violation of its contractual obligation," that "Tadco has failed
to demonstrate the ability to complete the work" and that "Tadco
continues to delay the project."  See Def. Ex. C at 1.  None of
these allegations go to the heart of TADCO's professional
competence any more so than the vague statements alleged in
TADCO's complaint.

        The second statement – that TADCO has failed to demonstrate
the ability to complete the work – comes the closest to
qualifying as stigmatizing.  However, on its own, this statement
is insufficiently grave to create the kind of stigma that has
previously been held sufficient to state a stigma-plus claim.
It does not substantially denigrate TADCO's abilities as a
contractor or categorize its many failings; rather, it suggests
only that under the particular circumstances, DASNY did not
believe it could work successfully with TADCO to complete the
project.  Cf. Donato, 96 F.3d at 630 ("[E]ven governmental
allegations of professional incompetence do not implicate a

liberty interest in every instance.  Such allegations will support a right to a name-clearing hearing only when they denigrate the employee's competence as a professional and impugn the employee's professional reputation in such a fashion as to effectively put a significant roadblock in that employee's continued ability to practice his or her profession.").

In addition to TADCO's failure to plead sufficiently stigmatizing statements, it has not adequately alleged that DASNY's statements "seriously hindered [its] ability to find work in [its] field."  See Piccoli, 2009 WL 4794130, at *4. TADCO conclusorily states that it has "sustained a tangible burden on its future employment prospects," Compl. ¶ 121, but includes no facts to "render plausible" this element of its § 1983 claim.  Cf. Piccoli, 2009 WL 4794130, at *4.

Accordingly, TADCO has failed to adequately allege the stigma required to establish a stigma-plus liberty interest deserving of due process protection.  Although it is clear that TADCO and DASNY substantially disagree about who should shoulder the blame for delays in the project and about the amount of money DASNY owes to TADCO, these disagreements are the proper subject of TADCO's state law breach of contract claims.  Having determined that TADCO has alleged neither a liberty nor property

interest upon which its § 1983 due process claim can stand, this claim must be dismissed.[5]

## (3)

## Claims of Thomas DeMartino

Plaintiffs have alleged a second set of constitutional claims under 42 U.S.C. § 1983 for malicious prosecution, abuse of criminal process and false arrest under the Fourth, Fifth and Fourteenth Amendments, against DASNY, Middleton, Cinelli, Kemp and John Doe, for the trespassing charges against DeMartino arising from his November 9, 2006 and January 2007 arrests. They have further made identical allegations under state law. Defendants move to dismiss all of these claims, arguing (1) that the state law causes of action with respect to the first trespassing arrest are barred by the applicable statute of limitations, and (2) that DeMartino has not sufficiently pled any of these claims.

As defendants point out, DeMartino, now representing himself pro se, has not filed any opposition to defendants' motion to dismiss. Therefore, defendants conclude that "DeMartino has determined not to pursue in this court his claims

---

[5] Because it is determined that TADCO has not adequately pled the existence of a constitutionally protected liberty or property interest of which it was deprived, defendants' argument that an adequate post-deprivation remedy existed, such that due process was not violated, need not be reached.

for false arrest, abuse of process and malicious prosecution . . . ." Defs.' Reply at 7. TADCO responds by arguing that TADCO itself has third party standing to assert claims of false arrest, malicious prosecution and abuse of process on DeMartino's behalf. See Pl.'s Mem. at 18 n.1. This argument is far from plausible, and TADCO points to no case permitting a plaintiff to step into the shoes of another plaintiff and assert his claims simply because the second plaintiff is proceeding pro se. Indeed, as defendants point out, the Supreme Court has found proceeding pro se not to be the type of "hindrance" to a party's ability to advocate for himself that permits third party standing. See Kowalski v. Tesmer, 543 U.S. 125, 132 (2004). Therefore, TADCO will not be permitted to assert third party standing on DeMartino's behalf.

Nevertheless, defendants are incorrect that inaction on DeMartino's part so readily disposes of his claims. There has been no indication by DeMartino that by not filing opposition papers, he intends to withdraw his claims. Absent some affirmative indication to this effect, DeMartino's complaint should only be dismissed if the pleadings are insufficient to withstand a 12(b)(6) motion. See McCall v. Pataki, 232 F.3d 321, 322-23 (2d Cir. 2000) ("[T]he sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law. If

a complaint is sufficient to state a claim on which relief can be granted, the plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal."). DeMartino's failure to present opposition papers thus does not merit outright dismissal of his claims; rather, the sufficiency of the complaint must be assessed as a matter of law.

As it happens, the analysis of DeMartino's claims surrounding his November 9, 2006 arrest differs considerably from the analysis of his January 2007 arrest. For this reason, these claims are considered separately. Moreover, as the analysis differs among the named defendants, they are also considered separately.

**a. Claims Arising from the November 9, 2007 Arrest**

**i.    False Arrest against Middleton**

DeMartino first brings a § 1983 false arrest claim against Middleton, DASNY's field representative, with respect to his arrest on November 9, 2006. "Federal claims for false arrest and imprisonment brought via § 1983 rest on an individual's Fourth Amendment right to be 'free from unreasonable seizures, including arrest without probable cause,' and are 'substantially the same as a claim for false arrest under New York law.'" Rateau, 2009 WL 3148765, at *5. To state a false arrest claim under New York law, a plaintiff must show that: "(1) the

defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged."  Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir. 1995) (internal marks omitted); see also Broughton v. State, 37 N.Y.2d 451, 456-57, 335 N.E.2d 310, 314, 373 N.Y.S.2d 87, 93 (1975).

This case presents the atypical situation of a civilian, as opposed to an arresting officer, being sued for false arrest. Defendants' primary argument in their motion to dismiss is that civilians are not liable merely for furnishing information to the police.  They are correct that "a defendant who furnishes information to police will not generally be held liable for false arrest when the police exercise independent judgment to arrest a plaintiff."  Rateau, 2009 WL 3148765, at *6; see also Olowosoyo v. City of Rochester, 08-CV-6007, 2009 WL 1650419, at *4 (W.D.N.Y. June 12, 2009).  But there is an exception to this rule "where a plaintiff can show that defendant instigated his arrest, thereby making the police agents in accomplishing defendant's intent to confine the plaintiff."  Rateau, 2009 WL 3148765, at *6 (internal marks omitted).  A defendant "instigates" an arrest when he takes "an active role in the arrest of the plaintiff, such as giving advice and encouragement or importuning the authorities to act," with the intent to

confine the plaintiff.  Lowmack v. Eckerd Corp., 303 A.D.2d 998,

999, 757 N.Y.S.2d 406, 408 (4th Dept. 2003) (internal marks

omitted).  Such an active role includes the provision of false

information leading to an arrest, where the defendants "lacked

reasonable cause for their belief in the plaintiff's

culpability."  Weintraub, 423 F. Supp. 2d at 56 (denying summary

judgment on false arrest claim because there was an issue of

fact as to whether defendant "knew [plaintiff] had not assaulted

her, but nonetheless intended to have him arrested by making

false statements to the police").

The complaint relates the following events with respect to

DeMartino's November 9, 2006 arrest.  On November 9, DeMartino

and Middleton entered a dispute under the contract regarding

whether or not DASNY could require TADCO to cover open trenches

with wood planks.  Compl. ¶¶ 76-79.  That same day, Middleton

lodged a criminal complaint against DeMartino for trespassing

and "demand[ed] that he be arrested" to the state police

officers in charge of the facility, who proceeded to arrest

DeMartino and charge him with trespassing.  Id. at ¶ 80.

At least at the pleading stage, these allegations put forth

a plausible claim of false arrest against Middleton for

DeMartino's November 9 arrest.  According to the events as laid

out by the complaint, rather than going through the appropriate

channels to settle their contractual dispute or remove DeMartino

from the job site, Middleton instead called the police and "demand[ed]" DeMartino's arrest.

Defendants attempt to legitimize Middleton's actions by explaining that certain contract provisions gave DASNY authority to order DeMartino removed from the site, thereby making him a trespasser. In general, defendants appear correct that they had the authority under certain contract provisions to have TADCO supervisory staff terminated, and employees removed from the project, at DASNY's request. See Graber Decl., Ex. B § 5.01(B)-(C).[6] However, this does not answer the question of whether or not such authority was properly exercised prior to DeMartino's November 9 arrest. It may well be that before calling state officers to demand that they arrest DeMartino, Middleton made it clear to DeMartino and TADCO that DASNY was exercising its contractual authority to have DeMartino removed and would consider him trespassing if he remained on the property. But it could also be that Middleton actively encouraged DeMartino's arrest by falsely reporting him to be a trespasser before having

_____

[6] These contractual provisions provide in full:

      B.  If at any time the supervisory staff is not satisfactory to the Owner, the Contractor shall, if directed by the Owner, immediately replace such supervisory staff with other staff satisfactory to the Owner.
      C.  The Contractor shall remove from the Work any employee of the Contractor or of any Subcontractor when so directed by the Owner.

Graber Decl., Ex. B, § 5.01(B)-(C).

him properly removed from the project, in which case he could be

liable for the arrest.[7] Cf. Weintraub, 423 F. Supp. 2d at 56;

Lowmack v. Eckerd Corp., 303 A.D.2d at 999-1000; Shattuck v.

Town of Stratford, 233 F. Supp. 2d 301, 314 (D. Conn. 2002).

Therefore, at least at this stage, DeMartino's false arrest

claim under § 1983 against Middleton for the November 9, 2007

arrest is sufficient.


### ii. Malicious Prosecution against Middleton

DeMartino also asserts a claim of malicious prosecution

against Middleton stemming from his November 9, 2006 arrest.

"Though related, the torts of false arrest or imprisonment and

malicious prosecution protect individuals from different harms.

Whereas the tort of false imprisonment protects the personal

interest of freedom from restraint of movement, the tort of

malicious prosecution protects the personal interest of freedom

from unjustifiable litigation." Weintraub, 423 F. Supp. 2d at

59 (internal quotation marks omitted).  A claim of malicious

---

[7] Defendants proffer a letter written from DASNY's Project
Manager to Frank DeMartino, TADCO's Project Manager, on November
9, 2006 as evidence that DASNY had already exercised its
contractual right to have Thomas DeMartino removed from the
project at the time he was arrested that day.  See Graber Decl.,
Ex. E.  Even if this letter were considered at this stage in the
litigation, it would not clear up the timing of the events that
occurred that day, because the letter could have been received,
or Frank DeMartino could have followed its instructions, after
Thomas DeMartino's arrest, rather than prior to it.

prosecution under § 1983, as under New York law, requires a plaintiff to plead: (1) that the defendant either commenced or continued a criminal proceeding against the plaintiff, (2) without probable cause, (3) with actual malice, and (4) that the proceeding terminated in plaintiff's favor. Rateau, 2009 WL 3148765, at *8; see also Smith-Hunter v. Harvey, 95 N.Y.2d 191, 195, 734 N.E.2d 750, 753, 712 N.Y.S.2d 438, 441 (2000).

As with false arrest, although malicious prosecution claims are usually made against arresting or prosecuting officials, they can also be brought against individuals other than the arresting officer when such a person actively engaged in a plaintiff's prosecution. See Shattuck, 233 F. Supp. 2d at 313-14 (explaining that civilian defendant could be liable for malicious prosecution "if the plaintiffs could show she had 'initiated' or 'instigated' the proceedings against them by contacting the police and then encouraging their prosecution"). "Giving information to the police that is known to be false qualifies as the commencement of a prosecution." Rivers v. Towers, Perrin, Forster & Crosby Inc., 07-CV-5441, 2009 WL 817852, at *3 (E.D.N.Y. March 27, 2009) (Trager, J.) (citing Lupski v. County of Nassau, 32 A.D.3d 997, 998, 822 N.Y.S.2d 112, 114 (2d Dep't 2006)).

DeMartino has adequately pled each element of malicious prosecution. He has alleged that on November 9, Middleton

falsely told police that he was trespassing, when in fact he was
authorized to be at the job site, Compl. ¶¶ 80-82, thereby
adequately alleging the commencement of a criminal proceeding[8]
and a lack of probable cause.[9]  Cf. Lupski, 32 A.D.3d at 999
(explaining that lack of probable cause can be shown by "proof

---

[8] It is not clear from the complaint whether DeMartino made any
appearance in court following the issuance of a summons against
him.  However, case law seems to favor the contention that the
issuance of a summons following a warrantless arrest, even
without a further appearance, constitutes initiation of a
"proceeding."  See Casale v. Kelly, 257 F.R.D. 396, 411 n.118
(S.D.N.Y. 2009) (explaining that the analysis of whether being
"merely issued a summons" following a warrantless arrest,
without a further proceeding, was sufficient to state a Fourth
Amendment seizure for purposes of a malicious prosecution claim
is "not . . . straightforward"); see also Murphy v. Lynn, 118
F.3d 938, 944-45 (2d Cir. 1997) (explaining that plaintiff
pleading malicious prosecution under § 1983 must establish the
existence of "an unreasonable seizure from the initiation or
pendency of judicial proceedings," and finding that although
warrantless arrest preceding arraignment did not constitute a
seizure, post-arraignment requirements that plaintiff appear for
court appointments and not leave the state sufficed); Rosario v.
Amalgamated Ladies' Garment Cutters' Union, Local 10, 605 F.2d
1228, 1249-50 (2d Cir. 1979) (finding that both a summons and an
appearance ticket issued following an arrest constitute
"proceedings" for purposes of a New York malicious prosecution
claim); Lopez v. City of New York, 901 F.Supp. 684, 688
(S.D.N.Y. 1995) (finding that issuance of a desk appearance
ticket following a warrantless arrest "qualifie[d] as the
commencement of a criminal proceeding for purposes of a
malicious prosecution claim" under New York law and § 1983).

[9] Defendants again argue that Middleton had probable cause
because DASNY had exercised its contractual right to have
DeMartino barred from the job site, and therefore DeMartino's
continued presence made him a trespasser.  This argument is
rejected here for the reason explained above with respect to
DeMartino's false arrest claim: from the complaint alone, it is
not clear that DeMartino had been properly terminated from the
project and had been apprised of this fact at the time he was
arrested.

that defendant has . . . misrepresented or falsified the evidence or else kept back evidence which would affect the result").

DeMartino has also alleged actual malice.  Actual malice requires pleading facts that show the defendant "commenced the prior criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served."  Du Chateau v. Metro-North Commuter RR Co., 253 A.D.2d 128, 132, 688 N.Y.S.2d 12, 15 (1st Dep't 1999).  Because DeMartino alleges that Middleton maliciously commenced the proceeding as a means of retaliating against him and gaining leverage in their disagreement over how to handle the open trenches at the jobsite, Compl. ¶¶ 76-81, 127, this element is adequately pled.

Finally, DeMartino has properly alleged a favorable termination by stating that the case against him "was subsequently dismissed in its entirety," Compl. ¶¶ 82-83, and "in a manner that indicated his innocence," id. at ¶ 128. Although the complaint does not indicate the actual disposition of the case, and DeMartino later will have to present facts to support his claim that the termination was favorable to him, bare allegations to this effect are sufficient at this stage. See Rivers, 2009 WL 817852, at *4 ("There is nothing implausible about a bare allegation that the prosecution terminated in

plaintiff's favor and hence there is no need to amplify that allegation by pleading specific facts.")

Accordingly, DeMartino's § 1983 malicious prosecution claim against Middleton is also sufficiently pled with respect to the proceeding stemming from his November 9, 2006 arrest and will not be dismissed.

### iii. Abuse of Criminal Process against Middleton

DeMartino's final § 1983 claim against Middleton with respect to his November 9 arrest is for abuse of criminal process. As with false arrest and malicious prosecution, a federal § 1983 abuse of process claim tracks New York's cause of action and has three essential elements: (1) regularly issued process; (2) the person activating the process must be moved by a purpose to do harm without that which has been traditionally described as economic or social excuse or justification; and (3) defendant must be seeking some collateral advantage or corresponding detriment to the plaintiff which is outside the legitimate ends of the process. <u>Bd. of Educ. Of Farmingdale Union Free Sch. Dist. V. Farmingdale Classroom Teachers Ass'n</u>, 38 N.Y.2d 397, 403, 343 N.E.2d 278, 283 (1975) (internal citations omitted); <u>see also</u> <u>Cook v. Sheldon</u>, 41 F.3d 73, 80 (2d Cir. 1994).

Here again, DeMartino has sufficiently pled each of these elements. Defendants argue that plaintiffs have not adequately pled that DASNY sought to do harm without justification or that defendants were seeking an advantage outside the legitimate ends of the process. This position, however, ignores plaintiffs' allegations that DASNY had DeMartino arrested and charged with trespassing "in order to intimidate and frustrate Mr. DeMartino and TADCO and thereby obtain an advantage over them in the ongoing contractual and construction disputes." Compl. ¶ 136. At this early stage, this statement sufficiently alleges the second two elements of an abuse of process claim. If DeMartino can ultimately prove that DASNY employees falsely furnished information that DeMartino was trespassing, and did so in order to achieve the collateral objective of an advantage over TADCO in their contract disputes, these actions would constitute both an improper motive and an improper purpose for DASNY's participation in the November 9, 2006 arrest. Cf. Rivers, 2009 WL 817852, at *5; Webster v. City of New York, 333 F. Supp. 2d 184, 208 (S.D.N.Y. 2004) (explaining that abuse of process claims require "[i]mproper motive . . . joined with improper purpose").

More complicated is the question of whether plaintiff has pled the first element, the existence of regularly issued process. DeMartino has alleged that defendants improperly

40

contributed to his arrest, but not that they took any further actions in his prosecution. It remains unclear whether New York law permits abuse of process claims "based on the issuance of the process itself," as opposed to some abuse of the process after it is issued. Compare Webster, 333 F. Supp. 2d at 208 (suggesting issuance might be enough), with Richardson v. New York Health and Hosps. Corp., 05-CV-6278, 2009 WL 804096, at *16 (S.D.N.Y. March 25, 2009) (collecting Southern District of New York cases requiring further abuse of process after issuance); Jones v. Maples/Trump, 98-CV-7132, 2002 WL 287752, at *7 (S.D.N.Y. Feb. 26, 2002) (holding that "without an allegation that the process has been improperly perverted 'after' its issuance, a claim of abuse of process must be dismissed, even though the defendant acted maliciously in initiating the process"). The New York Court of Appeals, however, has noted in dicta that "nothing in this Court's holdings would seem to preclude an abuse of process claim based on the issuance of the process itself." Parkin v. Cornell Univ., Inc., 78 N.Y.2d 523, 530, 577 N.Y.S.2d 227, 230, 583 N.E.2d 939, 943 (1991); see also Mitchell v. County of Nassau, 05-CV-4957, 2007 WL 1580068, at *12 (E.D.N.Y. 2007) (explaining that whether "the mere act of issuing process" fails to give rise to a claim of abuse of process "has been called into doubt by the New York Court of Appeals"). Recognizing the split of opinion on this issue and

not foreclosing the possibility that defendants could later challenge DeMartino's § 1983 abuse of process claim on this ground should he choose to pursue it, at least at this stage, DeMartino will be considered to have plausibly alleged abuse of process in violation his constitutional rights under § 1983.

### iv. State law Claims

DeMartino alleges identical causes of action under New York law, for false arrest, malicious prosecution and abuse of process stemming from his November 9, 2006 arrest.  Defendants argue that these state law claims are time-barred by New York's one-year statute of limitations for intentional torts.[10]  They are correct in part.

New York's one-year statute of limitations does indeed govern claims for false arrest, malicious prosecution and abuse of process.  See N.Y. CPLR § 215(3) (malicious prosecution and false imprisonment actions must be commenced within one year); Benyo v. Sikorjak, 50 A.D.3d 1074, 1077, 858 N.Y.S.2d 215, 218 (2d Dep't 2008) (one year statute of limitations also applies to

---

[10] In contrast, plaintiffs' federal claims are not time-barred because claims brought pursuant to § 1983 are governed by the forum state's general or residual statute for personal injury actions – in New York, three years – even if state law provides more specific statutes of limitations for particular types of personal injury actions.  Owens v. Okure, 488 U.S. 235, 250-51 (1989).

abuse of process).  However, the statute of limitations for each
of these actions does not begin to run at the same time.

For false arrest, the one year statute of limitations runs
from the date when the party suing for false imprisonment is
released from custody or confinement.  See Roche v. Village of
Tarrytown, 309 A.D.2d 842, 843, 766 N.Y.S.2d 46, 47 (2d Dep't
2003).  The complaint here alleges that DeMartino was arrested
on November 9, 2006, was brought to the local precinct and was
issued a criminal summons.  Compl. ¶ 82.  It appears, given that
there are no allegations of further confinement, that he was
released from custody that same day.  Therefore, his cause of
action accrued on November 9, 2006.  Defendants are thus correct
that DeMartino's state law false arrest claim was untimely when
filed on January 7, 2008, and will be dismissed for this reason.

In contrast to false arrest claims, claims for malicious
prosecution and abuse of process do not accrue until the
underlying action which is the basis for the claim is terminated
in the plaintiff's favor by dismissal.  See Nunez v. City of New
York, 307 A.D.2d 218, 219, 762 N.Y.S.2d 384, 385 (1st Dep't
2003) (malicious prosecution); Benyo, 50 A.D.3d at 1077 (abuse
of process).  Because statute of limitations is an affirmative
defense, defendants "moving to dismiss a cause of action as
time-barred bear[] the initial burden of establishing that the
time to sue has expired."  Town of Hempstead v. Lizza

43

Industries, Inc., 293 A.D.2d 739, 740, 741 N.Y.S.2d 431, 432 (2d Dep't 2002).  At this stage, it is difficult to discern exactly how the November 9, 2006 trespassing charges against DeMartino terminated.  Certainly, though, defendants have not shown that these proceedings terminated before January 7, 2007, such that DeMartino's malicious prosecution and abuse of process claims would be untimely.  Cf. Bano v. Union Carbide Corp., 361 F.3d 696, 710 (2d Cir. 2004) (applying New York law and explaining that defendant has the burden, in asserting a statute of limitations defense, of showing when the cause of action accrued).  Defendants' motion to dismiss these claims on statute of limitations grounds is therefore denied.

However, DeMartino's state law claims of malicious prosecution and abuse of process suffer from a further defect. Although not required for § 1983 claims,[11] under New York law, a plaintiff proceeding under either of these theories must allege special damages.  Wilhelmina Models, Inc. v. Fleisher, 19 A.D.3d 267, 269, 797 N.Y.S.2d 83, 84-85 (1st Dep't 2005) (malicious prosecution); Morea v. Saywitz, 09-CV-4410, 09-CV-3935, 2010 WL 475302, at *3 (E.D.N.Y. Feb. 8, 2010) (abuse of process) (citing Farmingdale Classroom Teachers Assoc., 38 N.Y.2d at 405);

---

[11] See, e.g., Day v. Morgenthau, 909 F.2d 75, 77 (2d Cir. 1990) (explaining that when proceeding under § 1983, a plaintiff need not allege special damages, because "the victim is harmed by the invasion of his zone of privacy" alone).

Coggins v. County of Nassau, 07-CV-3624, 2008 WL 2522501, at *14 n.11 (E.D.N.Y. June 20, 2008) (same). "Special damages are specific and measurable losses which must be alleged with sufficient particularity to identify actual losses and be related causally to the alleged tortious acts." Morea, 2010 WL 475302, at *3 (internal marks omitted). Unsurprisingly then, "'[r]ound numbers' and general allegations of dollar amounts are insufficient as special damages." Daniels v. Alvarado, No. 03-CV-5832, 2004 WL 502561, at *7 (E.D.N.Y. Mar. 12, 2004).

In this case, DeMartino has generally pled damages in an amount of "not less than $1,000,000.00" for his November 9 abuse of process and malicious prosecution claims, Compl. ¶¶ 405, 411, but has not pled any special damages. Accordingly, these state law malicious prosecution and abuse of process claims will be dismissed. Cf. Morea, 2010 WL 475302, at *3 (dismissing an abuse of process claim under New York law for failure to plead special damages).

In sum, DeMartino's claims of false arrest, malicious prosecution and abuse of process under § 1983 against Middleton for his November 9, 2006 arrest are sufficient to withstand a motion to dismiss. DeMartino's state law claim of false arrest for the November 9 arrest is dismissed as time-barred, and his state law claims of malicious prosecution and abuse of process for this arrest are dismissed for failure to plead special

damages.  The issue remains, however, of whether the surviving
federal claims should be permitted to stand against the
remaining named defendants.

### v.    Liability of Additional Named Defendants

As noted earlier, DeMartino's § 1983 false arrest,
malicious prosecution and abuse of process claims for his
November 9, 2006 arrest name not only Middleton as a defendant,
but also DASNY and Middleton's supervisors, Cinelli and Kemp.
The complaint alleges that Cinelli and Kemp "approved of and
authorized" the actions of Middleton with respect to DeMartino's
November 9, 2006 arrest.  Compl. ¶¶ 158, 166.

At this stage, this allegation is sufficient to state a
§ 1983 claim for supervisory liability.  "The liability of a
supervisor under § 1983 can be shown in one or more of the
following ways: (1) actual direct participation in the
constitutional violation, (2) failure to remedy a wrong after
being informed through a report or appeal, (3) creation of a
policy or custom that sanctioned conduct amounting to a
constitutional violation, or allowing such a policy or custom to
continue, (4) grossly negligent supervision of subordinates who
committed a violation, or (5) failure to act on information
indicating that unconstitutional acts were occurring."
Hernandez v. Keane, 341 F.3d 137, 145 (2d Cir. 2003).  Because

DeMartino alleges that Kemp and Cinelli actively participated in Middleton's actions, he has adequately pled their liability. Cf. Lenhard v. Dinallo, 08-CV-00165, 2009 WL 890596, at *7 (N.D.N.Y. March 31, 2009) (finding that allegations that supervisors "encouraged and condoned" unconstitutional actions of defendant were sufficient to plead § 1983 supervisory liability). Thus, DeMartino's § 1983 claims of false arrest, malicious prosecution and abuse of process with respect to his November 9, 2006 arrest survive against Kemp and Cinelli.

However, as against DASNY as a named defendant, DeMartino's § 1983 allegations cannot stand. Although DASNY, consistent with case law, does not assert sovereign immunity or an inability to be sued as a person under § 1983 as defenses, see supra note 2, as a State Authority, it appears entitled to the same protections that municipalities receive when being sued under § 1983. See Raysor v. Port Auth. of New York and New Jersey, 768 F.2d 34, 38 (2d Cir. 1985) (applying the standards for municipal liability to the Port Authority and finding that "the section 1983 claim against the Port Authority was properly dismissed because there was no showing that the injury was caused by execution of a custom or policy of the Port Authority, as required by Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691-95 . . . (1978)"). Monell, the Supreme Court case that

established § 1983 municipal liability, has been interpreted to require that "[i]n order for a plaintiff to sufficiently allege employer liability pursuant to § 1983, he must prove that the acts complained of are a result of the official custom and policy of the defendant governmental agency." Lazaratos v. Ruiz, 2003 WL 22283832, at *4 (S.D.N.Y. 2003) (citing Pembaur v. City of Cincinnati, 475 U.S. 469, 478-79 (1986) and Monell, 436 U.S. at 694).

There are no such allegations present here. DeMartino has nowhere claimed that it is DASNY's official custom or policy to have the employees of contractors with whom it is displeased arrested rather than removed from projects through lawful channels. As a result, the § 1983 claims for false arrest, malicious prosecution and abuse of process against DASNY fail.

**b. Claims Arising from DeMartino's January 2007 Arrest**

Unlike DeMartino's claims for his November 9, 2006 arrest, his false arrest, malicious prosecution and abuse of process claims regarding his January 2007 arrest fail in their entirety. With respect to this later arrest, defendants are correct that plaintiff has not sufficiently alleged a lack of probable cause.

The existence of probable cause defeats claims of both false arrest and malicious prosecution, although not claims of abuse of process. See Covington v. City of New York, 171 F.3d

117, 122 (2d Cir. 1999); Rothstein v. Carriere, 373 F.3d 275, 282 (2d Cir. 2004). In cases where defendant is a civilian complainant, to overcome the presumption of probable cause, a plaintiff must plead facts to show that that the complainant "gave false information or withheld information" from the arresting officer. See Du Chateau, 253 A.D.2d at 132 (finding no civilian liability for false arrest because "[t]here [was] no evidence that [defendant] gave false information or withheld information from [the arresting officer]"). Indeed, even if a civilian complainant is ultimately incorrect in his belief as to whether a person is committing a crime, he need only have had a reasonable basis for this belief in order to have the probable cause necessary to defeat a malicious prosecution or false arrest claim. See Williams v. Town of Greenburgh, 535 F.3d 71, 78-79 (2d Cir. 2008) (affirming dismissal of false arrest and malicious prosecution claims against a civilian complainant who reasonably but erroneously thought plaintiff was trespassing based on his knowledge that the plaintiff had previously been barred from the site).

Even under plaintiffs' recounting of the events, probable cause existed for the January arrest. Plaintiffs do not suggest that, as of January, DASNY had not communicated to TADCO and DeMartino its intent to have DeMartino barred from the job site. Rather, they argue that DASNY did not in fact have this

authority: "As TADCO's on-site superintendent and management representative for the Project, Mr. DeMartino was obviously not trespassing and DASNY had no right to unilaterally and arbitrarily 'exclude' him from the jobsite." Compl. ¶¶ 81, 85. However, as explained above and contrary to plaintiffs' assertions, the contract between DASNY and TADCO clearly gave DASNY authority to have DeMartino removed from the worksite upon request. Although it is unclear whether this authority was properly exercised prior to DeMartino's November 9 arrest, there is no question that as of January 2007, based on the November incident and DASNY's decision to remove DeMartino from the project, DASNY employees believed DeMartino had no right to be at the job site. Accordingly, the complaint of trespassing filed by a DASNY employee in January was based on a reasonable belief that DeMartino was in fact trespassing by returning to the site. Therefore, probable cause existed for this January arrest and DeMartino's false arrest and malicious prosecution claims under both § 1983 and state law cannot stand. Cf. Williams, 535 F.3d at 78-79.

DeMartino's abuse of process claim for this arrest also fails. Although probable cause is not a specific element of an abuse of process claim under § 1983, the facts that give rise to probable cause for the January arrest also make it impossible for DeMartino to adequately plead that the person activating

regularly issued process was moved by an improper purpose, as required for an abuse of process claim. <u>See</u> <u>Webster</u>, 333 F. Supp. 2d at 208. For the reasons explained above, DASNY employees reasonably believed DeMartino to be a trespasser at the job site when they reported him to police in January. As DeMartino alleges, these employees may also have had ulterior motives for having DeMartino arrested in January 2007. Nevertheless, it cannot be said that they clearly had an improper purpose for their use of the criminal process, given that they used the criminal process to have a person they reasonably believed to be a trespasser arrested for trespassing. <u>See</u> <u>id.</u> at 208 (explaining that "a malicious motive alone does not give rise to a cause of action for abuse of process" under New York law if the process of the court is used for its proper purpose (internal marks omitted)).

For the reasons explained above, all of DeMartino's claims with respect to his January 2007 arrest are dismissed.

**(4)**

**Leave to Amend**

TADCO has requested leave to amend the complaint to cure any deficiencies. If DeMartino wishes to amend his state law malicious prosecution and abuse of process claims for his November 9, 2006 arrest to allege special damages, he may do so.

As for TADCO's request that it be permitted to amend its claim

of a due process violation under § 1983, leave is denied.  TADCO

has generally claimed that it believes that any deficiency in

its pleadings can be cured with an amended pleading, see Pl.'s

Mem. at 25, but has not identified any way in which it could

amplify its allegations of defamation except by pointing to the

contents of the letter from James Gray to TADCO dated January

10, 2007.[12]  See Graber Decl., Ex. E.  It has already been

determined that the contents of this letter do not add

appreciably to TADCO's claim that it has been stigmatized in

violation of its constitutional rights.  As TADCO has offered no

further evidence to demonstrate that it could amend its

complaint in a manner that would survive dismissal, leave to

amend is denied.   See Hayden v. County of Nassau, 180 F.3d 42,

53 (2d Cir. 1999) ("[W]here the plaintiff is unable to

demonstrate that he would be able to amend his complaint in a

manner which would survive dismissal, opportunity to replead is

rightfully denied.").

---

[12] At one point TADCO also suggests that "similar false
allegations" contained in a second letter dated January 17, 2007
from Gray to TADCO might form the basis of its claim, but it
does not identify any statements in this second letter that it
believes to be defamatory.  Pl.'s Mem. at 15.  As with the
January 10 letter, it does not appear that any stigmatizing
statements exist in this letter.  See Graber Decl., Ex. D.

## Conclusion

Defendants' motion to dismiss is granted with respect to
TADCO's due process claim under the Fifth and Fourteenth
Amendments and 42 U.S.C. § 1983 (1st Cause of Action);
DeMartino's claims of false arrest, malicious prosecution and
abuse of process under 42 U.S.C. § 1983 with respect to his
November 9, 2006 arrest, as against DASNY only (2nd-4th Causes
of Action); DeMartino's claims of false arrest, malicious
prosecution and abuse of process under 42 U.S.C. § 1983 with
respect to his January 2007 arrest as against all defendants
(5th-7th Causes of Action); and DeMartino's state law claims of
false arrest, malicious prosecution and abuse of process with
respect to both his arrests as against all defendants (34th-
39th Causes of Action).  Defendants' motion to dismiss is denied
with respect to DeMartino's § 1983 claims of false arrest,
malicious prosecution and abuse of process arising from his
November 9, 2006 arrest against Middleton, Cinelli and Kemp (2nd
-4th Causes of Action).

At this time, defendants have not challenged the adequacy
of plaintiffs' claims of wrongful termination (8th Cause of
Action), breach of contract (9th-30th Causes of Action), quantum
meruit (31st-32nd Causes of Action) or unjust enrichment (33rd
Cause of Action).  Accordingly, as several federal claims remain

in this case, these state law claims also remain under

supplemental jurisdiction.


Dated: Brooklyn, New York
       March  19, 2010


                              SO ORDERED:

                              _____/s/_____
                              David G. Trager
                              United States District Judge