```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - X
TADCO CONSTRUCTION GROUP CORP. and
THOMAS DEMARTINO,

                    Plaintiffs,         MEMORANDUM & ORDER

        - against -                     08-CV-73 (KAM)(JMA)


DORMITORY AUTHORITY OF THE STATE OF NEW
YORK, TYRONE MIDDLETON, PAT CINELLI,
JAMES GRAY, JACK KEMP and JOHN DOES
#1-#5,

                    Defendants.
- - - - - - - - - - - - - - - - - - - - X
```

**MATSUMOTO, UNITED STATES DISTRICT JUDGE:**

On January 7, 2008, plaintiff TADCO Construction Corporation ("TADCO") and TADCO's on-site superintendent and management representative, Thomas DeMartino ("DeMartino") (collectively, "plaintiffs"), brought this action against the Dormitory Authority of the State of New York ("DASNY") and several DASNY employees, alleging thirty-nine federal and state causes of action arising out of a contentious construction contract dispute between TADCO and DASNY. On March 19, 2010, then-presiding Judge Trager[1] granted in part and denied in part defendants' motion to dismiss all of plaintiffs' federal claims

---

[1] The action was transferred to the undersigned on January 28, 2011. (*See* Docket Entry dated 1/28/2011.)

1

and DeMartino's state-law claims. The claims Judge Trager dismissed included certain of DeMartino's federal claims and all of DeMartino's state-law claims for false arrest, malicious prosecution, and abuse of process. On February 14, 2012, this court denied DeMartino's motion for reconsideration of Judge Trager's March 19, 2010 order.

Presently before the court is DeMartino's motion for this court's entry of partial final judgment of Judge Trager's March 19, 2010 order and issuance of a certificate of appealability as to that judgment pursuant to Federal Rule of Civil Procedure 54(b). For the reasons set forth below, DeMartino's motion is denied.

## BACKGROUND

The court assumes the parties' familiarity with the underlying facts as alleged by plaintiffs and as set forth in Judge Trager's Memorandum and Order dated March 19, 2010 (see ECF No. 39, Memorandum and Order dated 3/19/2010 ("Trager M&O") at 2-10), and repeats only facts relevant to the instant motion.

**I.   Relevant Facts**

On June 15, 2005, DASNY awarded TADCO a general construction contract (the "Contract") for work on a new ten-bed residence building for the Staten Island Developmental Disabilities Services Office (the "Project"). (ECF No. 1, Complaint ("Compl.") at ¶¶ 14, 17, 23 & Ex. A at 2.) The

2

project was plagued by delays that TADCO generally attributes to DASNY's inadequate pre-construction planning and failure to manage DASNY's other contractors. (*Id.* ¶¶ 22, 42-45.)

### A. November 9, 2006 Arrest

On November 9, 2006, defendant Tyrone Middleton ("Middleton"), one of DASNY's field representatives, ordered DeMartino, TADCO's on-site superintendent and management representative for the Project, to cover with wood planks the site's open trenches, which could not be backfilled. (Compl. ¶¶ 74, 76.) DeMartino refused, on grounds that the work was not specified in the Contract and required extra labor, materials, supplies, and equipment not specified in the Contract. (*Id.* ¶¶ 77-78.) Middleton then lodged a criminal complaint against DeMartino, demanding that the state police officers assigned to the facility arrest DeMartino for trespassing on the job site. (*Id.* ¶ 80.) Based on Middleton's complaint, the police arrested and handcuffed DeMartino, and brought him to the local precinct, where he was charged with trespass in violation of New York Penal Law § 140.05.[2] (*Id.* ¶ 82.) The trespass charge was later dismissed. (*Id.* ¶ 83.)

### B. January 2007 Arrest

In early January 2007, Middleton and another DASNY personnel lodged another criminal complaint against DeMartino,

---
[2] Pursuant to New York Penal Law § 140.05, "A person is guilty of trespass when he knowingly enters or remains unlawfully in or upon premises."

3

demanding his arrest for trespassing on the job site. (*Id.* ¶ 84.) DeMartino was arrested based on the complaint and spent the night in jail. (*Id.* ¶¶ 85-86.) DeMartino alleges that the January 2007 complaint was "patently false[] for the same reasons that the [November 9, 2006] complaint was false." (*Id.* ¶ 85.) Although DeMartino was again charged with trespass in violation of New York Penal Law § 140.05,[3] the charge was later dismissed. (*Id.* ¶¶ 86-87.)

## II. The Instant Action

### A. Plaintiff's Claims[4]

DeMartino asserted claims of false arrest, malicious prosecution, and abuse of process pursuant to 42 U.S.C. § 1983 ("Section 1983") and state law against DASNY, Middleton, Cinelli, and Jack Kemp (Chief of Construction Contracts for DASNY),[5] for their respective roles in effectuating DeMartino's arrest on November 9, 2006. (Compl. ¶¶ 124-150, 399-419.) DeMartino also asserted claims of false arrest, malicious prosecution, and abuse of process pursuant to Section 1983 and

---

[3] Plaintiffs cite to New York Penal Law § 140.04 (*see* Compl. ¶ 86), but no such provision exists; accordingly, the court construes the complaint as referencing New York Penal Law § 140.05.

[4] Although DeMartino joined TADCO in asserting other causes of action against defendants, the court discusses only the relevant claims here. Furthermore, the court notes that the claims discussed herein were brought solely by DeMartino because, as Judge Trager correctly held in his March 19, 2010 Order, TADCO does not have third-party standing to assert claims of false arrest, malicious prosecution, and abuse of process on behalf of DeMartino. (*See* Trager M&O at 30.)

[5] Although DeMartino alleges that Middleton was immediately responsible for his arrest and prosecution, he also names Cinelli and Kemp as defendants on grounds that either or both individuals approved and authorized Middleton's actions. (Compl. ¶¶ 139, 149, 158.)

4

state law against DASNY, Middleton, Cinelli, Kemp, and John Doe for their respective roles in effectuating DeMartino's arrest in January 2007. (*Id.* ¶¶ 151-177, 420-440.)

### B. Judge Trager's March 19, 2010 Order

On March 19, 2010, Judge Trager granted in part and denied in part defendants' motion to dismiss all of plaintiffs' federal claims and DeMartino's state-law claims. (*See generally* Trager M&O.)

#### 1. Claims Arising From November 9, 2006 Arrest

Judge Trager found that plaintiff sufficiently pled each element of his Section 1983 claims of false arrest, malicious prosecution, and abuse of process against Middleton. (*Id.* at 31-42.) Judge Trager noted that it appeared that defendants had authority to terminate and remove TADCO supervisory staff and employees at DASNY's request pursuant to the Contract,[6] which could furnish the probable cause that would defeat a claim for false arrest or malicious prosecution. (*Id.* at 34.) Nevertheless, the court determined that the facts, as pled, left open the question of "whether or not such authority

---

[6] The relevant contractual provision provides:
  B.  If at any time the supervisory staff is not satisfactory to the Owner, the Contractor shall, if directed by the Owner, immediately replace such supervisory staff with other staff satisfactory to the Owner.
  C.  The Contractor shall remove from the Work any employee of the Contractor or of any Subcontractor when so directed by the Owner.
 (ECF No. 34-4, Declaration of Joel Graber ("Graber Decl.") Ex. B § 5.01(B)-(C).)

5

was properly exercised prior to DeMartino's November 9[, 2006] arrest." (*Id.*)  Moreover, because DeMartino's allegations were sufficient to state a Section 1983 claim for supervisory liability against Cinelli and Kemp, Judge Trager denied defendants' motion to dismiss the Section 1983 claims against Cinelli and Kemp.  (*Id.* at 46.)

Judge Trager dismissed DeMartino's Section 1983 claims for false arrest, malicious prosecution, and abuse of process as against DASNY, however, because DeMartino "nowhere claimed that it is DASNY's official custom or policy to have the employees of contractors with whom it is displeased arrested rather than removed from projects through lawful channels."  (*Id.* at 48.) In addition, because plaintiff's state-law false arrest claim was untimely (*see id.* at 42–43) and plaintiff failed to plead special damages with respect to his state-law malicious prosecution and abuse-of-process claims (*id.* at 43-44), Judge Trager dismissed all of plaintiff's state-law claims that arose from plaintiff's November 9, 2006 arrest.  (*Id.* at 45-46.)

### 2. Claims Arising From January 2007 Arrest

Judge Trager granted defendants' motion to dismiss DeMartino's Section 1983 and state-law claims of false arrest, malicious prosecution, and abuse of process that arose out of his January 2007 arrest.  (*Id.* 48-51.)  Judge Trager determined that "[e]ven under plaintiffs' recounting of the events [of

6

DeMartino's January 2007 arrest], probable cause existed for the January arrest" because DASNY had indisputable authority, pursuant to the Contract, to have DeMartino removed from the worksite upon request and "there is no question that as of January 2007, based on the November incident and DASNY's decision to remove DeMartino from the project, DASNY employees believed DeMartino had no right to be at the job site." (*Id.* at 50.) Judge Trager thus concluded that "the complaint of trespassing filed by a DASNY employee in January was based on a reasonable belief that DeMartino was in fact trespassing by returning to the site" and probable cause to arrest therefore existed, obviating DeMartino's false arrest and malicious prosecution claims under Section 1983 and state law. (*Id.*)

Judge Trager also found that DeMartino's Section 1983 and state-law abuse-of-process claims failed because "the facts that give rise to probable cause for the January arrest also make it impossible for DeMartino to adequately plead that the person activating regularly issued process was moved by an improper purpose, as required for an abuse of process claim." (*Id.* at 50-51.)

### C. The Instant Motion

DeMartino brings the instant motion pursuant to Federal Rule of Civil Procedure 54(b) ("Rule 54(b)") seeking certification of appealability and entry of partial final

7

judgment of Judge Trager's March 19, 2010 Order. (*See generally* ECF No. 90, DeMartino's Memorandum of Law in Support of Motion for Certificate of Appealability ("DeMartino Mem."); ECF No. 94 ("DeMartino Reply").) Under Judge Trager's March 19, 2010 Order, DeMartino's claims involving the November 9, 2006 arrest – but not the January 2007 arrest – may proceed to trial together with twenty-six remaining causes of action, including claims for wrongful termination, breach of contract, quantum meruit, and unjust enrichment. (Trager M&O at 53-54.)

DeMartino contends that "[i]f the District Court erred in its holding with respect to the dismissal, and that singular determination is later upset on appeal, there would inevitably be two trials on factually and legally identical issues," resulting in "duplicative trials" and an "enormous waste of judicial resources" at the district-court level, because in DeMartino's estimation, "the 2006 and 2007 false arrest incidents involve nearly identical documentary and testimonial evidence." (*Id.* at 2, 4.)

DeMartino further asserts that Rule 54(b) certification is appropriate because "the two sets of claims in this case - false arrest incidents three months apart from each other - involve nearly identical evidence based on similar sets of events and circumstances." (*Id.* at 2.) Accordingly, DeMartino argues, if the court granted Rule 54(b) certification,

8

"only one jury, rather than two, [would] be required to become familiar" with the background and incidents.  (*Id*. at 4 (quoting *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 15 (2d Cir. 1997).)  DeMartino also urges the court to grant his motion for Rule 54(b) certification because "the instant case involves a meritorious appeal," particularly because Judge Trager's March 19, 2010 Order was predicated upon inaccurate findings, and "[t]he interests of justice, taken together with the interest of the judicial system in preventing piecemeal trials and preservation of court resources, warrant certification."  (*Id*. at 5; DeMartino Reply at 4.)

## DISCUSSION

### III. Legal Standard

In general, the court may enter final judgment in an action only after all claims have been adjudicated.  *Novick v. AXA Network, LLC*, 642 F.3d 304, 310 (2d Cir. 2011); *Perez v. Ortiz*, 849 F.2d 793, 796 (2d Cir. 1988) (same).  Rule 54(b), which provides an exception to that general rule, permits a court to "direct entry of a final judgment as to one or more, but fewer than all, claims . . . only if the court expressly determines that there is no just reason for delay."  Fed. R. Civ. P. 54(b).  The Second Circuit has counseled, however, that the historic "policy against piecemeal appeals 'requires that the court's power to enter such a final judgment before the

9

entire case is concluded . . . be exercised sparingly.'" *Novick*, 642 F.3d at 310 (quoting *Harriscom Svenska AB v. Harris Corp.*, 947 F.2d 627, 629 (2d Cir. 1991)).

The Rule 54(b) requirement that this court expressly determine "that there is no just reason for delay" means that "the court must provide a 'reasoned,' even if brief, 'explanation' of its considerations." *Id.* (quoting *Harriscom*, 947 F.2d at 629); *Nat'l Bank of Washington v. Dolgov*, 853 F.2d 57, 58 (2d Cir. 1988) (finding improper a partial judgment entered pursuant to Rule 54(b) where partial judgment was "conclusory in form, merely reciting the language of Rule 54(b) without providing any explanation for the conclusion that a partial final judgment should be entered immediately"). Specifically, the court must consider (1) "the policy against piecemeal appeals" and (2) "the equities between or among the parties." *Novick*, 642 F.3d at 310.

**A. Piecemeal Appeals**

The first factor, piecemeal appeals, involves a determination of "whether the claims under review are separable from the others remaining to be adjudicated and whether the nature of the claims already determined [i]s such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals." *Novick*, 642 F.3d

10

at 311 (quoting *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8 (1980)).

The Second Circuit has "repeatedly noted that the district court generally should not grant a Rule 54(b) certification 'if the same or closely related issues remain to be litigated.'" *Id.* (quoting *Harriscom*, 947 F.2d at 629). This is because "[i]t does not normally advance the interests of sound judicial administration or efficiency to have piecemeal appeals that require two (or more) three-judge panels to familiarize themselves with a given case' in successive appeals from successive decisions on interrelated issues." *Id.* (quoting *Harriscom*, 947 F.2d at 631); *Ginett v. Computer Task Group, Inc.*, 962 F.2d 1085, 1095 (2d Cir. 1992) ("We should avoid the possibility that the ultimate dispositions of the claims remaining in the district court could . . . require us to decide issues twice.").

**B. Equities Between or Among the Parties**

The second factor, "equities between or among the parties," considers whether "there exists 'some danger of hardship or injustice through delay which would be alleviated by immediate appeal.'" *O'Bert ex rel. Estate of O'Bert v. Vargo*, 331 F.3d 29, 41 (2d Cir. 2003) (quoting *Cullen v. Margiotta*, 618 F.2d 226, 228 (1980)).

The hardships to be considered may affect a party to the litigation. *See, e.g.*, *Advanced Magnetics*, 106 F.3d at 16 (citing, as example of "hardship or injustice," the prospect that "a plaintiff might be prejudiced by a delay in recovering a monetary award"). The Second Circuit has also recognized that unnecessary, expensive, and duplicative trials also constitute hardships to be considered. *See, e.g.*, *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 165 (2d Cir. 2005) (finding "danger of hardship or injustice" where district court dismissed antitrust claim against thirty non-New York defendants, and that "it would make no sense to try the antitrust count against New York State alone if the dismissals of the other states or the other claims turned out to be in error"); *Building Indus. Fund. v. Local Union No. 3 Int'l Brotherhood of Elec. Workers*, 992 F. Supp. 162, 191 (E.D.N.Y. 1996) (quoting *Cullen*, 811 F.2d at 711) ("Rule 54(b) certification may be appropriate 'where an expensive and duplicative trial could be avoided if, without delaying prosecution of the surviving claims, a dismissed claim were reversed in time to be tried with other claims.'").

## IV. Application

As the Second Circuit noted in *Novick*, "it is incumbent upon a party seeking immediate relief in the form of a Rule 54(b) judgment to show not only that the issues are

sufficiently separable to avoid judicial inefficiency but also that the equities favor entry of such a judgment." 642 F.3d at 314. The court finds that DeMartino has failed to meet this burden.

### A. Piecemeal Appeals

The court finds that the first factor, piecemeal appeals, weighs against granting DeMartino's motion for Rule 54(b) certification. As noted *supra*, the Second Circuit has "repeatedly noted that the district court generally should not grant a Rule 54(b) certification 'if the same or closely related issues remain to be litigated.'" *Novick*, 642 F.3d at 311 (quoting *Harriscom*, 947 F.2d at 629). Here, DeMartino argues that Rule 54(b) certification is "proper, as the two sets of claims in this case – false arrest incidents three months apart from each other – involve nearly identical evidence based on similar sets of events and circumstances." (DeMartino Mem. at 2.) As defendants point out, however, DeMartino's argument "strongly counsels *against* Rule 54(b) certification" (ECF No. 93, Defendants' Opposition to DeMartino Motion Seeking Certification ("Defs. Mem."), at 8), particularly because a grant of Rule 54(b) certification at this juncture would result in the need for "'two (or more) three-judge panels to familiarize themselves with a given case' in successive appeals

from successive decisions on interrelated issues." *Novick*, 642 F.3d at 311 (quoting 947 F.2d at 631).

Moreover, the court finds that DeMartino's reliance on *Advanced Magnetics*, 106 F.3d 11, is misplaced. In *Advanced Magnetics*, the Second Circuit affirmed a district court's Rule 54(b) certification of certain claims so that "only one jury, rather than two, [would] be required to become familiar with the [relevant underlying] events." 106 F.3d at 17. The Second Circuit also noted, however, that Rule 54(b) certification was permissible because the issues presented on appeal were "entirely unrelated to the merits of the claims . . . to be tried," and because "nothing that [would] be aired at trial [of the remaining claims would] be expected to shed light" on the issues presented on appeal. *Id*.

Here, in contrast, the issues that DeMartino would present on an appeal regarding the claims arising from his January 2007 arrest *are* related to DeMartino's remaining claims, as both sets of claims share nearly identical background facts and involve nearly identical parties. Accordingly, given the interrelated nature of the claims, the issuance of Rule 54(b) certification would result in the type of piecemeal appeals against which the Second Circuit has counseled. *See Gidatex, S.r.L. v. Campaniello Imports, Ltd.*, 73 F. Supp. 2d 345, 348 (S.D.N.Y. 1999) ("While the Court appreciates [defendant's]

14

concern for the judicial resources of the district court in attempting to avoid two trials, Rule 54(b)'s primary concern is the conservation of the appellate court's resources in avoiding multiple appeals.").

### B. Equities Between or Among the Parties

The court also finds that DeMartino has failed to show that the equities among the parties weigh in favor of Rule 54(b) certification. Plaintiff conclusorily submits that postponing his appeal "*may* result in duplicative trials and create an enormous waste of judicial resources" (*see* DeMartino Mem. at 2 (emphasis added)), but fails to give the court a sound basis for finding that any second trial on his dismissed claims would be so expensive and unnecessary as to constitute an unusual "hardship or injustice." Moreover, DeMartino fails to account for the fact that any second trial would be minimally duplicative because most of the remaining twenty-six causes of action have no relation to DeMartino's January 2007 arrest.

The only additional hardships plaintiff identifies are the "prejudice [caused by] having to wait until completion of a trial to pursue his other claim" and "tremendous additional legal fees for a potential second trial" that he will incur in the absence of Rule 54(b) certification. (DeMartino Mem. at 5.) These hardships are inherent in *every* denial of Rule 54(b) certification, and hardly rise to the level of hardships that

15

warrant immediate appeal, however.  *See Hogan v. Consol. Rail Corp.*, 961 F.2d 1021, 1025 (2d Cir. 1992) (reversing district court's Rule 54(b) certification for failure to find that "the case was an exceptional one or that there would be any unusual hardship in requiring [the parties] to await, in accordance with normal federal practice, the disposition of the entire case before obtaining appellate review of the dismissal of their claims").

In addition, the court is not persuaded by plaintiff's argument that the court should grant Rule 54(b) certification because "the instant case involves a meritorious appeal and a likelihood of success on its merits" (DeMartino Mem. at 5), because "'[s]peculation' about the importance of an appeal on a legal issue cannot 'serve as sufficient ground to warrant a Rule 54(b) certification.'"  *In re Vivendi Universal, S.A., Secs. Litig.*, No. 02 Civ. 5571, 2012 WL 362028, at *3 (S.D.N.Y. Feb. 6, 2012) (quoting *Cornwell v. Credit Suisse Grp.*, 270 F.R.D. 145, 147 (S.D.N.Y. 2010)).

The court must balance its equities analysis against the efficiency considerations required in the first factor, *see id.* at *4, and the court finds that the balance tips decidedly against Rule 54(b) certification.  The Second Circuit has clearly directed that the court should "sparingly" exercise its

power to issue partial final judgment, and the court finds no justification for exercising such power in the instant case.

## CONCLUSION

For the foregoing reasons, the court denies DeMartino's motion for this court's entry of partial final judgment of Judge Trager's March 19, 2010 order and issuance of a certificate of appealability as to that judgment pursuant to Federal Rule of Civil Procedure 54(b).

SO ORDERED.

Dated:   Brooklyn, New York
         July 23, 2012

                                                      _____/s/_____
                                                    **KIYO A. MATSUMOTO**
                                                    United States District Judge
                                                    Eastern District of New York